**FILED**

May 12, 2025

**Fifteenth Court of Appeals
Christopher A. Prine
Clerk of Court**

ACCEPTED
15-25-00009-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
5/12/2025 9:36 AM
CHRISTOPHER A. PRINE
CLERK

RECEIVED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
5/12/2025 9:36:02 AM
CHRISTOPHER A. PRINE
Clerk

Court of Appeals Number: 15-25-00009-CV
_____

IN THE COURT OF APPEALS FOR

THE FIFTEENTH JUDICIAL DISTRICT OF TEXAS

**SAMMY TAWAKKOL**,
*Appellant*,

v.

**SHEILA VASQUEZ**, in her Official Capacity as Manager of the Texas Department of Public Safety- Sex Offender Registration Bureau; and,

**FREEMAN F. MARTIN**, in his Official Capacity as Director of the Texas Department of Public Safety;[*]

*Appellees*

_____

**APPELLANT'S BRIEF**

_____

RICHARD GLADDEN
State Bar No. 07991330
1204 West University Dr., Ste. 307
Denton, Texas 76201
940/323-9300 (Voice)
940/539-0093 (Fax)
richscot1@hotmail.com (email)
ATTORNEY FOR APPELLANT

**APPELLANT REQUESTS ORAL ARGUMENT**

---

[*] Steven McCraw, who in his official capacity as Director of the Texas Department of Public Safety was previously a named defendant in this case, was succeeded by Freeman F. Martin on December 2, 2024. In accordance with Rule 7.2(a) of the Texas Rules of Appellate Procedure, Director Freeman has been automatically substituted in Director McCraw's place on this appeal.

# IDENTITY OF PARTIES AND COUNSEL

**TRIAL COURT:**           THE 200th JUDICIAL DISTRICT COURT
OF TRAVIS COUNTY, TEXAS

The Hon. Judge James Carrol, Presiding

## TRIAL AND APPELLATE COUNSEL FOR APPELLANT:

Richard Gladden
Texas Bar No. 07991330
Law Office of Richard Gladden
1204 W. University Dr., Ste. 307
Denton, Texas 76201
940/323-9300 (voice)
940/539-0093 (fax)
richcot1@hotmail.com (email)

## TRIAL AND APPELLATE COUNSEL FOR APPELLEES:

Christopher Lee Lindsey
Texas Bar No. 24065628
Assistant Attorney General of Texas
P. O. Box 12548, Capitol Station
Austin, Texas 78711
512/463-2157 (voice)
512/370-9314 (fax)
christopher.lindsey@oag.texas.gov (email)

*****

**TABLE OF CONTENTS**

Page

Identity of Parties and Counsel…………………………. i

Table of Contents………………………….…………. ii

Index of Authorities…………………………………...... v

I.  Statement Regarding Oral Argument…………….. 1

II. Statement of the Case………………………….. 5

III. Issues Presented…………………………………….. 5

IV. Statement of Facts……………………………….. 7

V. Summary of Argument………………………....... 7

VI.  Argument:

**a)** ***The State District Court Erred when Granting Defendants'***

***Motion to Dismiss on the Ground that Plaintiff's Claims are***

***Barred by the Res Judicata Doctrine.***

**1)** ***Texas Decisional Law Recognizes that Dismissal of an Action for Lack of Jurisdiction is not a Judgment "on the Merits" for Purposes of the Res Judicata Doctrine.***
………………………... 8

**2)** ***Section 16.064(a) of the Texas Civil Practice and Remedies Code Recognizes that a Dismissal of an Action for Lack of Jurisdiction is not a Judgment "on the Merits" for Purposes of Litigating the Same Action in a Second Court having Jurisdiction***.
………………………... 12

**b)** *The State District Court Erred when Granting Defendants' Motion to Dismiss on the Ground that Plaintiff's Claims are Barred by the "Collateral Estoppel" Doctrine.*

    **1)** *Applicable Law Governing the Collateral Estoppel Doctrine.* í í í í í í í í í í í .. 13

    **2)** *Because Dismissal of Plaintiff's Federal Cause of Action was Limited to a Determination that Plaintiff's Claims were Barred by Federal Sovereign Immunity, and Because Federal Sovereign Immunity Differs from Sovereign Immunity Doctrine under Texas Law which Contains an <u>Ultra Vires</u> Cause of Action Exception, Collateral Estoppel does not Bar Plaintiff's Claims.* í í í í í í í í í í í í í í . 15

**c)** *The State District Court Erred when Granting Defendants' Motion to Dismiss on the Ground that Plaintiff's State Court Petition did not Adequately Allege an <u>Ultra Vires</u> Cause of Action.*

    í í í í í í í í í í í í í í í í í í í í í í í í í 17

    **1)** *Applicable Law Governing <u>Ultra Vires</u> Causes of Action.* í í í í í í ... 18

    **2)** *The Sovereign Immunity Doctrine under Federal Law is Distinguishable from the Sovereign Immunity Doctrine Recognized under Texas Law.* í í í í í í í í í í í í .. 19

3) *The Defendant's Erroneous Determination that Plaintiff is a "Sex Offender" as defined by Texas Statutory Law, Involved "Some Discretion to Interpret and Apply a Law"; the Determination was "Without Legal Authority" under Texas Law; and the Determination was thus "Ultra Vires" within the Meaning of* <u>Houston Belt & Terminal Ry. Co. v. City of Houston</u>, *487 S.W.3d 154 (Tex. 2016).* ............... 21

4) *Article 62.003(c) of the Texas Code of Criminal Procedure does not Affect or Foreclose Plaintiff's* <u>Ultra Vires</u> *Cause of Action*. .................... 25

Prayer ........................... 26

Certificate of Compliance ..................... 26

Certificate of Service .................... 27

**APPENDIX**:

1) *District Court's Order Granting Plaintiff's Motion to Dismiss and Final Judgment* (January 2, 2025) (CR, 72). .................. **TAB 1**

2) U.S. District Court's Memorandum Opinion and Final Judgment*, Tawakkol v. Vasquez,* No. 1:19-cv-00513, Docket No. 101 (W.D. Tex. Feb. 7, 2024), on remand from, Tawakkol v. Vasquez, 81 F.4th 397 (5th Cir. 2023). .............. **TAB 2**

3) U.S. District Court's Memorandum Opinion and Final Judgment, *Tawakkol v. Vasquez*, No. No. 1:19-cv-00513, 2022 WL 20564755 (W.D. Tex. March 29, 2022). .............. **TAB 3**

4) Relevant Excerpts from *The Annual Report of the Texas Civil Judicial Council to the Governor and Supreme Court for 1929-1930* (1930) (CR, 66-70).

í í í í í í í í í í í í .. **TAB 4**

**INDEX OF AUTHORITIES**

**Cases:**                                                                    **Page**

*Barr v. Resolution Trust Corp.,* 837 S.W.2d 627 (Tex. 1992)í í í . 9

*Blatchford v. Native Village of Noatak and Circle Village*, 501 U.S. 775 (1991).

í í í í í í í í í í í í í í í í í í í í í . 20

*Bonniwell v. Beech Aircraft Corp*., 663 S.W.2d 816 (Tex. 1984)í ... 14

*Ctr. Equities, Inc. v. Tingley*, 106 S.W.3d 143(Tex. App.-Austin 2003, no pet.).

í í í í í í í í í í í í í í í í í í í í í 14

*City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009)í í ........... 19, 20

*Engelman Irrigation Dist. v. Shield Bros.,* 514 S.W.3d 746 (Tex. 2017).

í í í í í í í í í í í í í í í í í í í í í í í .. 9-11

*First Sabrepont Capital Mgmt. v. Farmland Partners Inc*., No. 23-0634 (Tex. April 25, 2025) (not yet published).

í í í í í í í í í í í í í 13

*Getty Oil Co. v. Ins. Co. of N. Am*., 845 S.W.2d 794 (Tex. 1992)í ... 14

*Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154 (Tex. 2016).

í í í í í í í í í í í í í í í í í í í ....... 19, 21, 22, 25

**Page**

*In re Calvert*, 913 F.3d 697 (7th Cir. 2019)íí í í í í í í ... 15

*In re USAA Gen. Indem. Co.*, 629 S.W.3d 878 (Tex. 2021)í í í í   14

*Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507 (Tex.1998).
í í í í í í í í í í í í í í í ... 14, 16

*Mower v. Boyer*, 811 S.W.2d 560 (Tex. 1991)í í í í í í í í . 15, 17

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012)í í í ... 23

*Quinney Elec., Inc. v. Kondos Ent., Inc.*, 988 S.W.2d 212 (Tex. 1999).
í í í í í í í í í í í í í í í í í í í í í í í í ... 14

*Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796 (Tex. 1994)í .. 14-17

*Tarter v. Metro. Sav. & Loan Ass'n*, 744 S.W.2d 926, 928 (Tex. 1988).
í í í í í í í í í í í í í í í í í í í í í í í í í ... 15, 17

*Tawakkol v. Vasquez*, No. 1:19-cv-00513 (U.S. W.D. Tex.)í í í ... 1-3, 5, 12-16

*Tawakkol v. Vasquez*, 81 F.4th 397 (5th Cir. 2023)í í í í í í í .. 2

*Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 577 (Tex. 2001)... 14

*United States v. Kebodeaux*, 570 U. S. 387 (2013)í í í í í í í .. 23

*Vale v. Ryan*, 809 S.W.2d 324 (Tex. App. ó Austin 1991)í í í í .. 13

*Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381 (Tex. 1985).
í í í í í í í í í í í í í í í í í í í í í í í ... 14

**Statutes, Codes, Rules, and Constitutional Provisions:**

Chapter 62, Articles 62.001-62.408, Texas Code of Criminal Procedure.
……………………………………… 7

Article 62.001(5), Texas Code of Criminal Procedure…………  7

Article 62.001(10)(a)(ii), Texas Code of Criminal Procedure……  7, 22, 26

Article 62.003(c), Texas Code of Criminal Procedure…………  17, 18, 25

Section 16.064, Texas Civil Practice and Remedies Code……… … 3, 12, 13

Section 21.15(b), Texas Penal Code……………… . 6

Sex Offender Registration and Notification Act ("SORNA"), 34 U.S.C. §§ 20901-20962.
………………………………… . 6, 9, 21, 23, 24

Uniform Code of Military Justice ("UCMJ") Article 120c(a)(2), Indecent Viewing,Visual Recording, or Broadcasting. 10 USC § 920C(a)(2).
……………………………………  6, 7, 23

Fourteenth Amendment, U.S. Constitution…………………… .. 2

**Other Sources**:

Acts of 1931, 42nd Leg., R.S., ch. 81, 1931 Tex. Gen. Laws 124……  13

Associated Press, *Texas Not Joining National Sex Offender Registry* (reprinted in Austin-American Statesman, Oct. 8, 2012).
………………… . 24

*Renee C. Lee, Texas Won't Participate in National Sex Offender Registry* (Houston Chronicle, Oct. 6, 2012).
......................................................... 24

R. McDONALD, TEXAS CIVIL PRACTICE (rev. ed. 1984)í í í 13

CHARLES ALLAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE (3rd ed. 2008).
í í í í í í í í í í .. 11

81st Leg., Tex. Sen. Comm. on Crim. Justice, Interim Report to the 82nd Leg. (Dec. 2010).
í í í í í í í í í í í í í í í í í í í í í í í 24

**\*\*\*\*\***

---

**APPELLANT'S BRIEF**

---

TO THE HONORABLE PRESIDING JUSTICE AND ASSOCIATE JUSTICES

OF THE COURT OF APPEALS FOR THE FIFTEENTH DISTRICT OF TEXAS:

**I.**

**STATEMENT REGARDING ORAL ARGUMENT**

This case involves a lengthy procedural history, as well as relatively complex legal issues for the Court of Appeals' determination. For these reasons Appellant has concluded the Court of Appeals would be significantly aided by oral argument when considering and deciding this case. Accordingly, Appellant requests this case be submitted *with* oral argument.

**II.**

**STATEMENT OF THE CASE**

On May 13, 2019, Appellant (hereinafter "Plaintiff") filed suit in the U.S. District Court for the Western District of Texas.[1] In that federal cause Plaintiff, in a second amended complaint, claimed Defendants' conduct violated Plaintiff's

---

[1] *Tawakkol v. Vasquez*, No. 1:19-cv-00513, Docket No. 1 (W.D. Tex. March 13, 2019).

1

procedural due process rights guaranteed by the Fourteenth Amendment of the U.S. Constitution.[2]

On March 29, 2022, the U.S. District Court, after a Bench trial on the merits, expressly ruled Plaintiff was not (and is not) required to register as a "sex offender" under either federal or Texas statutory law.[3] While this ruling by the U.S. District Court was subsequently "vacated" based on an appellate determination that the U.S. District Court was without jurisdiction to consider Plaintiff's challenge to Defendants' "sex offender" determination (based on Defendants' federal "sovereign immunity");[4] the appellate court (the U.S. Court of Appeals for the Fifth Circuit) did not otherwise reach or disturb the District Court's ruling, "on the merits," that concluded Plaintiff was not (and is not) required to register as a "sex offender" under either federal or Texas statutory law.[5]

On remand from the decision of the U.S. Court of Appeals for the Fifth Circuit, the U.S. District on February 7, 2024, entertained but ultimately denied

---

[2] *Tawakkol v. Vasquez*, No. 1:19-cv-00513 (W.D. Tex.); Docket No. 66, *Plaintiff's Second Amended [Federal] Complaint*, 14-19 (filed July 2, 2021).

[3] *Tawakkol v. Vasquez*, No. No. 1:19-cv-00513, 2022 WL 20564755, at *5 (W.D. Tex. March 29, 2022). A copy of the U.S. District Court's memorandum opinion is appended hereto as Appellant's **APPENDIX 3**.

[4] *Tawakkol v. Vasquez*, 81 F.4th 397, 403-404 (5th Cir. 2023).

[5] *Id.*, 81 F.4th at 402 n. 3 ("Because we decide this case on jurisdiction, we do not address the merits").

Plaintiff's motion for leave to file an third amended complaint based on its lack of federal jurisdiction.[6]

On March 11, 2024, in accordance with § 16.064 of the Texas Civil Practice and Remedies Code, Plaintiff filed an original state court petition in the 200th District Court of Travis County, Texas, arising from the same "transaction or occurrence" that formed the basis for his prior federal complaint.[7] This petition was thus filed "not later than the 60th day after" the date of the final dismissal, by the U.S. District on February 7, 2024, of Plaintiff's federal action based on the U.S. District Court's perceived lack of federal jurisdiction.[8]

On May 20, 2024, the Appellants (hereinafter "Defendants") filed a motion to dismiss Plaintiff's state court petition.[9] In their motion to dismiss Defendants contended:

1) the State District Court was without subject matter jurisdiction to consider Plaintiff's state court petition under the *res judicata* doctrine;[10]

---

[6] *Tawakkol v. Vasquez*, No. 1:19-cv-00513, Docket No. 101 (W.D. Tex. Feb. 7, 2024). A copy of this opinion of the U.S. District Court, on remand from the Fifth Circuit, appears in the Clerk's Record, at 44 ("CR, 44"), and is appended hereto as Appellant's **APPENDIX 2**. Hereinafter, references to "CR" are to the single-volume "Clerk's Record," which will be followed by a specific page number within the Clerk's Record, e.g., "CR, 5." The Reporter's Record will be referred to as "RR," followed by a specific page number within the Reporter's Record, *e.g.* "RR, 27."

[7] CR, 3, Plaintiff's Original State Court Petition ("Plaintiff's Petition"), No. D-1-GN-24-001566 (filed March 11, 2024).

[8] TEX. CIV. PRAC. & REM. CODE, § 16.064 (a)(2).

[9] CR, 17.

[10] CR, 18.

2) the Plaintiff's state court petition failed to allege a valid statutory cause of action sufficient to vest the State District Court with jurisdiction;[11]

3) the Plaintiff's state court petition failed to allege an *ultra vires* "cause of action" under Texas law sufficient to challenge Defendants' "non-discretionary" *ex parte* determination that Plaintiff is required to register as a sex offender under Texas law;[12] and,

4) the Plaintiff was "collaterally estopped" from bringing his state court petition as the result of the dismissal of his federal complaint by the U.S. District Court (for lack of federal jurisdiction based on *federal* sovereign immunity).[13]

Following the filing of Plaintiff's response in opposition to Defendants' motion to dismiss;[14] on July 1, 2024, the State District Court held a hearing on the State's motion.[15] On January 2, 2025, without further proceedings in the interim, the State District Court entered an order and final judgment that granted Defendants' motion to dismiss, finding that:

> "Plaintiff's claims are barred by the doctrines of *res judicata* and collateral estoppel, and also lack any cognizable cause of action under Texas law. The Court therefore finds that it lacks jurisdiction to consider any claim which might be asserted in this matter."[16]

On January 31, 2025, Plaintiff timely filed notice of appeal,[17] and this appeal followed.

---

[11] CR, 22.
[12] CR, 23.
[13] CR, 24.
[14] CR, 51.
[15] Reporter's Record (filed March 7, 2025).
[16] CR, 72, **APPENDIX 1**.
[17] CR, 73 (filed Jan. 31, 2025).

4

**III.**

**ISSUES PRESENTED**

a) *The State District Court Erred when Granting Defendants' Motion to Dismiss on the Ground that Plaintiff's Claims are Barred by the <u>Res Judicata</u> Doctrine.*

b) *The State District Court Erred when Granting Defendants' Motion to Dismiss on the Ground that Plaintiff's Claims are Barred by the "Collateral Estoppel" Doctrine.*

c) *The State District Court Erred when Granting Defendants' Motion to Dismiss on the Ground that Plaintiff's State Court Petition did not Adequately Allege an <u>Ultra Vires</u> Cause of Action.*

**IV.**

**STATEMENT OF FACTS**

The Plaintiff adopts, and incorporates by reference for purposes of this brief, *verbatim*, the "FINDINGS OF FACT" entered by the U.S. District Court for the Western District of Texas in its memorandum opinion rendered on March 29, 2022, after a Bench trial on the merits.[18] As found by the U.S. District Court:

On January 11, 2018, Plaintiff, while enrolled as a cadet at the United States Air Force Academy, was tried by court martial and entered a negotiated plea of

---

[18] *Tawakkol v. Vasquez*, No. No. 1:19-cv-00513, 2022 WL 20564755, at \*1-2 (W.D. Tex. March 29, 2022). A copy of the U.S. District Court's memorandum opinion is appended hereto as Appellant's **APPENDIX 3**.

5

guilty to three charges of criminal misconduct. All three charges stemmed from attempted or actual violations of Uniform Code of Military Justice ("UCMJ") Article 120c(a)(2), Indecent Viewing, Visual Recording, or Broadcasting. 10 USC § 920C(a)(2). Specifically, Plaintiff was convicted of "knowingly and wrongfully photograph[ing] the private area of female individuals, without their consent, and under circumstances in which the female individuals had a reasonable expectation of privacy." As punishment for commission of these offenses Plaintiff was reprimanded and restricted to a dormitory room at the Air Force Academy for 60 days. Additionally, two-thirds of Plaintiff's pay per month was ordered forfeited for a period of six months.

At the time of Plaintiff's plea, the presiding military judge ensured Plaintiff was aware that he "may have to register as a sex offender." The military judge made no formal or definitive finding of fact or conclusion of law concerning whether Plaintiff was required to register as a sex offender under any state or federal law, including the federal Sex Offender Registration and Notification Act ("SORNA"). 34 U.S.C. §§ 20901-20962. Plaintiff was also convicted of one count of Invasive Visual Recording on March 27, 2018, in a Texas state-court proceeding. Tex. Penal Code Ann. § 21.15(b). The Plaintiff's conviction under Section 21.15(b) is not included in the definition of a "reportable conviction or

adjudication" for the purposes of the registration required by Texas law. Tex. Code. Crim. Proc. Ann. § 62.001(5).

On May 15, 2018, Plaintiff was contacted by law enforcement officials employed by the City of Houston, Texas, and informed that, based on their correspondence with the Sex Offender Registration Bureau ("SORB") of the Texas Department of Public Safety, Plaintiff was required to register as a sex offender under Chapter 62 of the Texas Code of Criminal Procedure. Tex. Code. Crim. Proc. Ann. §§ 62.001-62.408. On March 4, 2019, Plaintiff's attorney, Jack B. Zimmermann ("Zimmermann"), sent a letter to SORB by United States mail, arguing that Plaintiff was not required to register under any federal law, under the UCMJ, or under Chapter 62. On March 22, 2019, Vasquez, Manager of SORB, replied in writing to Zimmerman's letter:

> "Thank you for your inquiry regarding Mr. Tawokkol's [sic] duty to register as a sex offender in Texas. Neither offense cited in your letter is considered substantially similar to a reportable offense in Texas. Therefore, the Texas offense is not a 'reportable conviction or adjudication' requiring registration under CCP Chapter 62. However, pursuant to CCP Art. 62.001(10), the offense under Art. 120c(a)(2) of the Uniform Code of Military Justice requires Mr. Tawokkol [sic] to register as an extrajurisdictional registrant in Texas."

## V.

## SUMMARY OF ARGUMENT

The trial court below erred when ruling it lacked "subject matter jurisdiction to consider any claim which might be asserted in this mater" because "Plaintiff's

7

claims are barred by the doctrines of *res judicata* and collateral estoppel, and also lack any cognizable cause of action under Texas law."[19] Neither the *res judicata* doctrine nor the collateral estoppel doctrine bars litigation of claims that have never before been reached on the merits; and dismissal of an earlier case or claim for "lack of jurisdiction" in another forum does not constitute a decision "on the merits" for purposes of applying either of those doctrines. Moreover, Plaintiff has validly pleaded an *ultra vires* cause of action against Defendants under well-settled precedent of the Supreme Court of Texas.

## VI.

## ARGUMENT

**a)** ***The State District Court Erred when Granting Defendants' Motion to Dismiss on the Ground that Plaintiff's Claims are Barred by the <u>Res Judicata</u> Doctrine.***

    **1)** ***Texas Decisional Law Recognizes that Dismissal of an Action for Lack of Jurisdiction is not a Judgment "on the Merits" for Purposes of the <u>Res Judicata</u> Doctrine.***

As Defendants acknowledged in the Trial Court,[20] the *res judicata* doctrine applies only when "a prior final judgment on the merits" has been entered by "a

---

[19] CR, 72, **APPENDIX 1**.

[20] CR, 18, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (filed May 20, 2024).

8

court of competent jurisdiction."[21]  In the present case, the U.S. Court of Appeals for the Fifth Circuit expressly ruled it was not "a court of competent jurisdiction," and it therefore did not address Plaintiff's *ultra vires* claims against Defendants "on the merits." Rather, the Fifth Circuit concluded, as a matter of federal constitutional law, that federal sovereign immunity deprived the U.S. District Court---a "federal" court--- of jurisdiction over Plaintiff's federal claims. In this connection, the Fifth Circuit stated:

> "[T]he district court determined that the Secretary of Defense lacked authority to designate the crime Tawakkol was convicted of as a sex offense under SORNA. (*Because we decide this case on jurisdiction, we do not address the merits of that determination*). So, it reasoned that, because Tawakkol had no duty to register as a sex offender under federal law, the State Defendants lacked any basis to classify him as an extrajurisdictional registrant under state law."[22]

Relying on the Texas Supreme Court's decision in *Engelman Irrigation Dist. v. Shield Bros.*, 514 S.W.3d 746 (Tex. 2017), the Defendants in the Trial Court asserted, and the Trial Court below ruled, the present suit was nonetheless barred by *res judicata* because Texas law does not invariably equate dismissal based on "sovereign immunity" with a dismissal for "lack of subject matter

---

[21] *Id.*, citing *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992).
[22] *Tawakkol v. Vasquez, supra,* 87 F.3d at 719 n. 3 (emphasis added); *and see id.*, 87 F.3d at 716 ("Because we conclude that Tawakkol's suit is barred by sovereign immunity, we VACATE and REMAND with instructions to dismiss for lack of jurisdiction.").

jurisdiction."[23] For several reason Defendants' contention should have been overruled by the Trial Court.

*First*, application of the *res judicata* doctrine depends on the grounds for dismissal in the judicial forum wherein the case was previously dismissed – here, a "federal" court. The Texas Supreme Court's decision in *Engelman*, *supra*, thus does not govern whether dismissal of an action on the basis of federal sovereign immunity by a federal court constitutes a "final judgment on the merits." Under federal decisional law, a dismissal based on federal sovereign immunity is not a final judgment "on the merits," particularly with regard to state law claims that have not been reached in the federal forum.

*Second*, as a matter of state law the decision in *Engelman* is inapposite to the circumstances presented by the present case. In *Engelman*, the Texas Supreme Court considered the effect of a prior final judgment "on the merits," wherein a claim to sovereign immunity had been denied under then-existing law. The question resolved in *Engelman* was whether the final judgment "on the merits" was subject to being re-opened decades later based on an intervening change in Texas decisional law that recognized the defendant's immunity. Rejecting the government's attempt to re-open the prior final judgment "on the merits," the Supreme Court concluded that the fact "the judgment may have been wrong or

---

[23] CR, 21-22; Defendants' Motion to Dismiss for Lack of Jurisdiction, 5-6 (filed May 20, 2024).

premised on a legal principle subsequently overruled does not affect application of *res judicata*."[24] Thus, the decision in *Engleman* did not involve the question asserted by Defendants in the Trial Court here, *i.e.*, whether the prior final judgment in the present case, *in the federal forum*, was "on the merits." Accordingly, the Texas Supreme Court's discussion in *Engelman* concerning the conceptual distinctions between a dismissal for lack of "subject matter jurisdiction" and a dismissal based on "sovereign immunity," upon which Defendants relied in the Trial Court, is irrelevant to whether a prior judgment "on the merits" was entered in the present case on remand by the U.S. District Court for purposes of the *res judicata* doctrine.

On remand from the Fifth Circuit, the U.S. District Court was obliged to allow Plaintiff an opportunity to amend his federal complaint under applicable federal rules to potentially cure any jurisdictional defect.[25] Thus, technically, it is the U.S. District Court's final judgment on remand, dated February 7, 2024, that is relevant to whether Plaintiff's *ultra vires* cause of action in the instant case was reached and determined "on the merits." This is of no consequence however, as it is undisputed the U.S. District Court's decision on remand, like the Fifth Circuit Court of Appeals, did not reach the merits of Plaintiff's federal claims, but instead

---

[24]*Engelman Irrigation Dist. v. Shield Bros.*, *supra*, 514 S.W.3d at 749.
[25] See, 9 CHARLES ALLAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2373, at 756-757 (3rd ed. 2008) (jurisdictional dismissals are without prejudice).

also ordered the dismissal of Plaintiff's claims based on the absence of federal jurisdiction (federal sovereign immunity).[26]

**2)** ***Section 16.064(a) of the Texas Civil Practice and Remedies Code Recognizes that a Dismissal of an Action for Lack of Jurisdiction is not a Judgment "on the Merits" for Purposes of Litigating the Same Action in a Second Court having Jurisdiction***.

Section 16.064 (a) of the Texas Civil Practice and Remedies Code ("§16.064(a)") provides:

(a) The period between the date of filing an action in a trial court and the date of a second filing of the same action in a different court suspends the running of the applicable statute of limitations for the period if:

(1) because of lack of jurisdiction in the trial court where the action was first filed, the action is dismissed or the judgment is set aside or annulled in a direct proceeding; and

(2) not later than the 60th day after the date the dismissal or other disposition becomes final, the action is commenced in a court of proper jurisdiction.

What is now codified under §16.064(a) was originally proposed in 1930 by the Texas Civil Judicial Council in its Second Annual Report,[27] and the Council's proposal was enacted as Article 5539a of the Texas Revised Civil Statutes by the

---

[26] CR, 44-46 ("[T]his case is DISMISSED for lack of subject matter jurisdiction based on sovereign immunity."); **APPENDIX 2**; *Tawakkol v. Vasquez*, No. 1:19-cv-00513, Docket No. 101 (W.D. Tex. Feb. 7, 2024).

[27] ANNUAL REPORT OF THE TEXAS CIVIL JUDICIAL COUNCIL TO THE GOVERNOR AND SUPREME COURT FOR 1929-1930, at 10-12, and 87 (1930) (hereafter "Annual Report"). Relevant excerpts from this report by the Council appear in the Clerk's Record, at CR, 66-70, and are appended hereto as Appellant's **APPENDIX 4**.

42nd Texas Legislature in 1931.[28] The purpose of this provision was to remedy the harsh jurisdictional effects that would otherwise arise when a lawsuit is initially filed in "the wrong court" in "good faith" by "capable lawyers."[29]

While §16.064(a) is explicitly designed to extend the applicable limitations period after a suit has been mistakenly filed in a court without jurisdiction, it necessarily follows that an action dismissed for "lack of jurisdiction" is not a "final judgment on the merits." Moreover, as the Austin Court of Appeals has ruled, this legal conclusion applies when a state law cause of action, involving the same parties and a commonality of facts, has been dismissed by a federal court for lack of jurisdiction.[30] In short, the Trial Court below erred when it dismissed Plaintiff state court petition in the ground that Plaintiff's claims are barred by *res judicata*.

**b)** ***The State District Court Erred when Granting Defendants' Motion to Dismiss on the Ground that Plaintiff's Claims are Barred by the "Collateral Estoppel" Doctrine.***

   **1)** ***Applicable Law Governing the Collateral Estoppel Doctrine***.

As recently discussed by the Supreme Court of Texas,[31] "collateral estoppel," also known as issue preclusion, bars parties from relitigating identical

---

[28] Acts of 1931, 42nd Leg., R.S., ch. 81, 1931 Tex. Gen. Laws 124.

[29] CR, 67; Annual Report, *supra*, at 11 (**APPENDIX 4**).

[30] *Vale v. Ryan*, 809 S.W.2d 324, 327 (Tex. App. – Austin 1991), *citing* 4 R. McDONALD, TEXAS CIVIL PRACTICE § 17.20, at 123 (rev. ed. 1984).

[31] *First Sabrepoint Capital Mgmt. v. Farmland Partners Inc.*, No. 23-0634 (Tex. April 25, 2025) (not yet published).

issues of fact or law in multiple lawsuits.[32] By focusing on the issues being

litigated instead of entire claims, collateral estoppel is "more narrow" in scope than

the related doctrine of *res judicata* or claim preclusion.[33] Specifically, collateral

estoppel prevents the same "ultimate issue of fact" from being litigated in more

than one suit.[34] In so doing, collateral estoppel promotes judicial efficiency,

protects parties from multiple lawsuits, and prevents inconsistent judgments.[35]

A party must establish several elements to prevail under the doctrine of

collateral estoppel. *First*, the party asserting the defense must show that the issue

as to which it seeks to estop relitigation "is the identical issue" litigated in the other

case.[36] When this element is in dispute, courts must carefully analyze the ultimate

issues to be proven-*i.e*., the factual issues and "essential elements of the claims"

being asserted in the different actions.[37] The party asserting the defense bears the

---

[32] *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985); *see also Quinney Elec., Inc. v. Kondos Ent., Inc.*, 988 S.W.2d 212, 213 (Tex. 1999) ("[T]he basic function of collateral estoppel [is] to prevent a party from relitigating an issue that the party previously litigated and lost.").

[33] *Van Dyke*, *supra*, 697 S.W.2d at 384.

[34] *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984).

[35] *In re USAA Gen. Indem. Co.*, 629 S.W.3d 878, 883 (Tex. 2021).

[36] *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 802 (Tex. 1992); *see also Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 521 (Tex. 1998) (holding that "the issue decided in the first action must be . . . identical to the issue in the pending action" for collateral estoppel to apply); *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 802 (Tex. 1994) (requiring "proper[] identifi[cation]" of the issue as to which the party seeks to estop relitigation).

[37] *Ctr. Equities, Inc. v. Tingley*, 106 S.W.3d 143, 153 (Tex. App.-Austin 2003, no pet.); *see also Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 577 (Tex. 2001) (holding that collateral estoppel bars claims when "the facts necessary to establish [those] claims" are "the same facts" found in a previous case).

burden to "map" the previous findings onto the claims asserted, demonstrating how the findings and issues actually litigated in the first action will be determinative of the claims asserted in the second action.[38]

*Second*, the party seeking application of collateral estoppel must demonstrate that the facts in the current suit "were fully and fairly litigated" in the earlier action.[39] To determine this question, Courts often consider "whether the parties were fully heard."[40]

*Third*, a party asserting the defense must establish that the same facts "were essential to the judgment" in the first suit.[41] A fact issue is considered essential and an "ultimate issue" if the factual determinations "are necessary to form the basis of a judgment."[42]

2) ***Because Dismissal of Plaintiff's Federal Cause of Action was Limited to a Determination that Plaintiff's Claims were Barred by Federal Sovereign Immunity, and Because Federal Sovereign Immunity Differs from Sovereign Immunity Doctrine under Texas Law which Contains an <u>Ultra Vires</u> Cause of Action Exception, Collateral Estoppel does not Bar Plaintiff's Claims.***

---

[38] *In re Calvert*, 913 F.3d 697, 701 (7th Cir. 2019); *see also Sysco Food Servs., Inc. v. Trapnell*, *supra*, 890 S.W.2d at 802 (holding that the defendants "had the burden of pointing out the issue they wished to be estopped").

[39] *Id.*, 890 S.W.2d at 801.

[40] *Mower v. Boyer*, 811 S.W.2d 560, 562 (Tex. 1991).

[41] *Sysco Food Servs., Inc. v. Trapnell*, *supra*, 890 S.W.2d at 801.

[42] *Tarter v. Metro. Sav. & Loan Ass'n*, 744 S.W.2d 926, 928 (Tex. 1988).

15

The issue of whether Plaintiff's *ultra vires* claims *under Texas law* are barred by Defendants' sovereign immunity *under federal law* is not before the Court on this appeal. What is before the Court on this appeal is whether the collateral estoppel doctrine under Texas law bars Plaintiff's *ultra vires* claims brought under Texas law.[43]

As discussed above, the prior dismissal of Plaintiff's claims in federal court was confined to a final judgment that determined the claims were barred by federal sovereign immunity.[44] Neither the U.S. Court of Appeals, nor the U.S. District Court on remand, considered or decided "the merits" of Plaintiff's claims; and for several reasons, the Trial Court thus erred when it ruled Defendants carried their burden to demonstrate collateral estoppel barred Plaintiff's claims.

*First*, the Trial Court in the present case erred when it ruled Defendants had carried their burden to demonstrate that "the issue as to [they] it see[k] to estop" relitigation of was "the identical issue" litigated in Plaintiff's federal case.[45] *Second*, the Trial Court erred when it determined Defendants had carried their burden to demonstrate the facts alleged by Plaintiff in the current suit "were fully

---

[43] The doctrinal distinctions between the federal sovereign immunity doctrine, and the *ultra vires* exception to sovereign immunity recognized under Texas law, are discussed *infra*, this brief at page 19.

[44] CR, 44-46 ("[T]his case is DISMISSED for lack of subject matter jurisdiction based on sovereign immunity."); *Tawakkol v. Vasquez*, No. 1:19-cv-00513, Docket No. 101 (W.D. Tex. Feb. 7, 2024) (**APPENDIX 2**).

[45] *Getty Oil Co. v. Ins. Co. of N. Am.*, *supra*, 845 S.W.2d at 802; *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, *supra*, 962 S.W.2d at 521; *Sysco Food Servs., Inc. v. Trapnell*, *supra*, 890 S.W.2d at 802.

and fairly litigated" in the earlier federal action,[46] and that the facts and applicable state law made the basis of the present suit "were fully heard" in the prior federal action.[47] *Third*, and finally, the Trial Court erred when it determined Defendants had carried their burden to demonstrate the same facts "were essential to the judgment" of dismissal ordered or entered by the federal courts in the first suit;[48] and further, that "factual determinations" made in the federal proceeding, if any, were "were necessary to form the basis" of the federal judgment of dismissal.[49] Under each of the foregoing three criteria the Trial Court's rulings and final judgment concerning the collateral estoppel doctrine were in error and must be reversed.

c) ***The State District Court Erred when Granting Defendants' Motion to Dismiss on the Ground that Plaintiff's State Court Petition did not Adequately Allege an <u>Ultra Vires</u> Cause of Action.***

Apart from the contentions that Plaintiff's claims were barred by res judicata and collateral estoppel, in the trial court Defendants also contended Plaintiff had not adequately alleged an *ultra vires* cause of action on essentially three grounds. *First*, Defendants contended that because Plaintiff's *ultra vires* "cause of action" is not expressly authorized by Article 62.003(c) of the Texas Code of Criminal

---

[46] *Sysco Food Servs., Inc. v. Trapnell, supra*, 890 S.W.2d at 801.
[47] *Mower v. Boyer, supra,* 811 S.W.2d at 562.
[48] *Sysco Food Servs., Inc. v. Trapnell, supra*, 890 S.W.2d at 801.
[49] *Tarter v. Metro. Sav. & Loan Ass'n, supra,* 744 S.W.2d at 928.

17

Procedure ("Article 62.003(c)"), Plaintiff could not validly allege an *ultra vires* cause of action.[50] *Second*, Defendants contended that Plaintiff had not alleged a valid *ultra vires* cause of action to challenge Defendants' "non-discretionary" *ex parte* determination that Plaintiff is required to register as a sex offender under Texas law.[51] *Third*, Defendants essentially contended that there is no doctrinal distinction between the federal sovereign immunity doctrine and the *ultra vires* exception to sovereign immunity recognized under Texas law, and that on this basis Plaintiff's *ultra vires* cause of action was barred by Defendants' entitlement to sovereign immunity *independently under Texas law*.[52] To the extent the trial court below sustained any of the foregoing three contentions by Defendants when it dismissed Plaintiff's petition, it erred as a matter of law.

### 1) *Applicable Law Governing <u>Ultra Vires</u> Causes of Action.*

While Plaintiff's claims against Defendants would generally be barred by Defendants' derivative "sovereign immunity," Texas law recognizes *ultra vires* causes of action such as the one Plaintiff has alleged. Under an *ultra vires* cause of action recognized by Texas law, sovereign immunity "does not preclude

---

[50] CR, 22; Defendants' Motion to Dismiss for Lack of Jurisdiction, 22-23 (filed May 20, 2024). Article 62.003 (c) permits persons to challenge a wrongful "sex offender" determinations made by Defendants through an appeal to a Travis County District Court. TEX. CODE. CRIM. P. art. 62.003(c).

[51] CR, 23.

[52] CR, 24; Defendants' Motion to Dismiss for Lack of Jurisdiction, 8 (filed May 20, 2024) ("Tawakkol's asserted *ultra vires* act in this matter is the determination that he must register as a sex offender under Chapter 62 of the Texas Code of Criminal Procedure. The federal courts, however, previously decided this exact issue [in the present case].").

prospective injunctive remedies in official-capacity suits against government actors" when they have engaged in (or will engage in) conduct that is either unauthorized by, or inconsistent with, Texas law.[53] The reason for this exception is that "*ultra vires* suits do not attempt to exert control over the State—they attempt to reassert the control of the State."[54] Such suits do not seek to alter government policy but rather to enforce existing policy.[55] Perhaps most salient for purposes of the resolving Defendant's motion to dismiss, the Texas Supreme Court has ruled "a government officer with some discretion to interpret and apply a law may nonetheless act 'without legal authority,' and thus *ultra vires*, if he exceeds the bounds of his granted authority."[56]

**2) *The Sovereign Immunity Doctrine under Federal Law is Distinguishable from the Sovereign Immunity Doctrine Recognized under Texas Law.***

It is uncontroverted that neither the Fifth Circuit's decision nor the U.S. District Court's decision on remand did not address whether Plaintiff's *ultra vires* cause of action was barred by sovereign immunity *under Texas law*. Nonetheless, given Defendants' persistent (but erroneous) assertion that those federal courts did so, it may be useful to note that a ruling that Plaintiff's *federal* claims are barred by

---

[53] *City of El Paso v. Heinrich*, 284 S.W.3d 366, 368-369 (Tex. 2009).
[54] *Id*., 284 S.W.3d at 372.
[55] *Ibid*.
[56] *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016).

*federal* sovereign immunity does not necessarily establish that Plaintiff's state-law claims are also barred by Texas' sovereign immunity doctrine. As discussed below, the two sovereign immunity doctrines, federal and state, are not coterminous; and Plaintiff's claims in the trial court below are not barred by Texas' sovereign immunity doctrine.

"Federal" sovereign immunity, as it would apply to the several states under federal law, rests on the conclusion "that the States entered the federal system with their sovereignty intact" and "that the judicial authority in Article III [of the U.S. Constitution] is limited by this sovereignty." *Blatchford v. Native Village of Noatak and Circle Village*, 501 U.S. 775, 779 (1991). In *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009), the Supreme Court of Texas recognized that the availability of sovereign immunity *under Texas law* (from which Defendants' claim to immunity derives) constitutes a determination that is independent of, yet influenced by, the same principles of public policy that is encompassed by the federal sovereign immunity doctrine: "protecting the public fisc."[57]

The Texas Supreme Court has ruled that, notwithstanding sovereign immunity under Texas law, "a government officer with some discretion to interpret and apply a law may nonetheless act 'without legal authority,' and thus *ultra vires*,

---

[57] *City of El Paso v. Heinrich*, 284 S.W.3d at 375-376.

if he exceeds the bounds of his granted authority,"[58] and that prospective declaratory and injunctive relief is permissible under Texas' sovereign immunity doctrine. In contrast, the U.S. Court of Appeals for the Fifth Circuit, specifically in the very federal case from which the instant case proceeds, ruled that "federal" sovereign immunity shielded Defendants from prospective relief *regardless of whether, and to what extent,* Defendants "misinterpreted" or "misapplied" a "law," or "exceeded" the authority granted to them by a Texas "law."[59] In short, because of this distinction between Texas sovereign immunity doctrine, and the federal sovereign immunity doctrine as applied by the Fifth Circuit in the present case, Plaintiff's claim are not barred by Texas' sovereign immunity doctrine.

3) ***The Defendant's Erroneous Determination that Plaintiff is a "Sex Offender" as defined by Texas Statutory Law, Involved "Some Discretion to Interpret and Apply a Law"; the Determination was "Without Legal Authority" under Texas Law; and the Determination was thus "Ultra Vires" within the Meaning of <u>Houston Belt & Terminal Ry. Co. v. City of Houston</u>, 487 S.W.3d 154 (Tex. 2016).***

The registration requirement contained in Chapter 62 of the Texas Code of Criminal Procedure ("Chapter 62") depends on the finding of a "substantive

---

[58] *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016).

[59] *Tawakkol v. Vasquez, supra,* 87 F.3d at 719 n. 3 ("[T]he [U.S.] district court determined that the Secretary of Defense lacked authority to designate the crime Tawakkol was convicted of as a sex offense under SORNA. (*Because we decide this case on jurisdiction, we do not address the merits of that determination.*") (emphasis added).

21

predicate" *that excludes* from its statutory definition of the term "sex offender" those *persons who have not been* convicted of or placed on community supervision for a "sex offense." In other words, the Texas Legislature did not "grant" Defendants "authority" under Chapter 62 to misinterpret federal law (as the U.S. District Court found Defendants did) and on that basis arbitrarily impose on any person a duty to register as a "sex offender" under Texas law. To the contrary, Texas statutory law places a "substantive limit" on "official discretion" to classify a person as a "sex offender."

In the present case, although Defendants contend their decisions were wholly "non-discretionary," this is not the case for purposes of Texas' *ultra vires* doctrine. When determining whether Plaintiff fit the statutory definition of a "sex offender," and more specifically when they determined Plaintiff fit the definition of an "extrajurisdictional registrant" provided by Article 62.001(10)(a)(ii) of the Texas Code of Criminal Procedure,[60] Defendants necessarily exercised "some discretion to interpret and apply a law."[61]

The Defendants attempt to argue otherwise, and contend their decision to misinterpret federal and state law was "compelled" by federal law and was

---

[60] Article 62.001(10)(a)(ii) of the Texas Code of Criminal Procedure provides that Defendants may classify a person as an "extrajurisdictional registrant" or "sex offender" under Texas law "if they have been if they are required to register as a sex offender under… federal law or the Uniform Code of Military Justice."

[61] *Houston Belt & Terminal Ry. Co., supra,* 487 S.W.3d at 158.

therefore "non-discretionary."[62] Here, Defendants' argument is demonstrably in error for at least two reasons.

*First*, the U.S. Government is not constitutionally vested with power to "commandeer" states or state officials and require them to comply with non-constitutional, federal statutory requirements.[63] It is for this reason, in part, that the federal Sex Offender Registration and Notification Act ("SORNA")[64] was enacted pursuant to the "Spending Clause" power of the U.S. Congress, the efficacy of which in turn depends on the discretionary willingness of the several states to accept federal funding in exchange for their voluntary compliance with SORNA. As the U.S. Supreme Court has noted, SORNA "use[s] Spending Clause grants to encourage States to adopt its uniform definitions and requirements. [SORNA] did not insist that the States do so."[65] Thus, any legal duty or obligation Defendants held to follow federal or military law under SORNA, with regard to the "sex offender" determination in this case, would have arisen under a "Spending Clause" agreement between the State of Texas and the U.S. government. And by its nature

---

[62] CR, 23; Defendants' Motion to Dismiss for Lack of Jurisdiction, 7 (filed May 20, 2024) ("Defendants, as state actors, [were] compelled by federal law to require Tawakkol to register as a sex offender as a result of his UCMJ sex offense.").

[63] *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 577-578 (2012) ("Congress may use its spending power to create incentives for States to act in accordance with federal policies. But when 'pressure turns into compulsion,' the legislation runs contrary to our system of federalism. The Constitution simply does not give Congress the authority to require the States to regulate.").

[64] 34 U.S.C. §§ 20901-20962.

[65] *United States v. Kebodeaux*, 570 U. S. 387, 398 (2013).

23

such an agreement, had it been in effect when Defendants acted, would have been "voluntary" and therefore "discretionary" on the part of the State of Texas.

*Second*, and perhaps more importantly, the State of Texas in 2011 officially "opted out" of the Spending Clause agreement it once had with the federal government before Defendants made the "sex offense" determination in the present case. An interim report published in 2010 by the Texas Senate Committee on Criminal Justice recommended the "[r]epeal" of "Article 62.402 (A) and (B) of the Code of Criminal Procedure to enable Texas not to be bound to the federal minimum for registration requirements."[66] In accordance with this recommendation, in 2012 Texas consciously elected to no longer comply with federal SORNA requirements because "the national registry [was] too costly";[67] and in October of 2017, the U.S. Department of Justice, through its "Office of Justice Programs, Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking" ("SMART"), "found Texas to have not substantially implemented SORNA."[68] Under these circumstances the Defendants, in their

---

[66] 81st Leg., Tex. Sen. Comm. on Crim. Justice, Interim Report to the 82nd Leg., p. 4 (Dec. 2010), available online at: https://lrl.texas.gov/scanned/interim/81/C868.pdf (last visited May 6, 2025).

[67] *See*, *Renee C. Lee, Texas Won't Participate in National Sex Offender Registry* (Houston Chronicle, Oct. 6, 2012); and, Associated Press, *Texas Not Joining National Sex Offender Registry* (reprinted in Austin-American Statesman, Oct. 8, 2012). Both of these newspaper articles are available online at: https://www.google.com/search (last visited May 6, 2025).

[68] SMART, *SORNA Substantial Implementation Review State of Texas*, at page 1, ¶ 1 (Oct. 2017), available online at: https://smart.ojp.gov/sites/g/files/xyckuh231/files/media/document/texas.pdf (last visited May 6, 2025).

official capacities, can hardly argue persuasively that they were "compelled" to comply with *ultra vires* interpretations of federal law made by the U.S. Secretary of Defense when they erroneously classified Plaintiff as a person required to register as a "sex offender" under Texas law.

**4)** ***Article 62.003(c) of the Texas Code of Criminal Procedure does not Affect or Foreclose Plaintiff's* <u>Ultra Vires</u> *Cause of Action***.

Finally, Defendants in the trial court below implied that because Article 62.003(c) of the Texas Code of Criminal Procedure ("Article 62.003(c)") only recognizes an appeal from adverse "substantial similarity" determinations they have made, and not "extrajudicial registrant" determinations, Plaintiff cannot validly bring an *ultra vires* cause of action that challenges the latter "extrajudicial registrant" determinations by the Defendants.[69] This contention is logically flawed. The fact that a plaintiff may have a statutory right to appeal from an adverse determination by Defendants under Article 62.003(c) (concerning the "substantial similarity" determinations) is irrelevant to the question of whether Plaintiff has sufficiently pleaded an *ultra vires* claim that alleges Defendants "exceed[ed] the bounds of [their] granted authority"[70] when they erroneously determined Plaintiff

---

[69] CR, 22-23, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, 6-7 (filed May 20, 2024).

[70] *Houston Belt & Terminal Ry. Co.*, *supra*, 487 S.W.3d at 158.

is an "extrajurisdictional registrant" under Article 62.001(10)(a)(ii) of the Texas Code of Criminal Procedure.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Appellant prays the District Court's final judgment in this case will be reversed, and that this case will be remanded for further proceedings consistent with the applicable law provided in this brief.

Respectfully submitted,

*/s/Richard Gladden*
State Bar No. 07991330
Law Office of Richard Gladden
1204 West University Dr., Ste. 307
Denton, Texas 76201
940/323-9300 (Voice)
940/539-0093 (Fax)
richscot1@hotmail.com (email)
*Attorney for Appellant*

## CERTIFICATE OF COMPLIANCE

This is to certify that, pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, this brief was computer-generated; that it contains less than 4,978 words (*including* the items excepted by Tex.R.App.P. 9.4(i)(1)); and that it therefore complies with the 15,000 word limitation stated in Rule 9.4(i)(2)(B) of the Texas Rules of Appellate Procedure.

*/s/Richard Gladden*

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document was served on both the Attorney of Record for the Appellees, **Christopher Lindsey**, Assistant Solicitor General of Texas, by use of the electronic service provider available at, and in accordance with, www.efiletexas.gov, and Rule 9.5 of the Texas Rules of Appellate Procedure, on this 6th day of May, 2025.

*/s/Richard Gladden*

# PLAINTIFF'S APPENDIX 1

## CAUSE NO. D-1-GN-24-001566

| | | |
|---|---|---|
| SAMMY TAWAKKOL, | § | |
| *Plaintiff,* | § | IN THE 200TH DISTRICT COURT |
| | § | |
| v. | § | |
| | § | |
| | § | |
| SHEILA VASQUEZ & STEVEN McCRAW, | § | OF TRAVIS COUNTY, TEXAS |
| *Defendants.* | § | |

## ORDER OF DISMISSAL

This day the Court considered the motion to dismiss of Defendants Sheila Vasquez and Steven McCraw. The Court, after considering the pleadings and arguments of the parties, is of the opinion that the following order should issue:

The Court finds that Plaintiff's claims are barred by the doctrines of *res judicata* and collateral estoppel, and also lack any cognizable cause of action under Texas law. The Court therefore finds that it lacks jurisdiction to consider any claim which might be asserted in this matter. The motion to dismiss is therefore GRANTED for the reasons stated therein. Any claims against Defendants are hereby DISMISSED with prejudice. This is a final order.

SIGNED on this the ___2nd___ day of ___January___, 20_25_.


_____
JUDGE PRESIDING

I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office On 02/10/2025 12:13:42

VELVA L. PRICE
DISTRICT CLERK
By Deputy:

72

# PLAINTIFF'S APPENDIX 2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SAMMY TAWAKKOL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | 1:19-CV-513-RP |
| | § | |
| SHEILA VASQUEZ, *in her Official Capacity as* | § | |
| *Manager of the Texas Department of Public Safety-* | § | |
| *Sex Offender Registration Bureau;* and STEVEN | § | |
| McCRAW, *in his Official Capacity as Director of* | § | |
| *the Texas Department of Public Safety,* | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is an order of the Fifth Circuit Court of Appeals instructing this Court to vacate the Court's prior decision and dismiss this case for lack of jurisdiction on the basis of sovereign immunity. (Dkt. 93).

## I. BACKGROUND

Plaintiff Sammy Tawakkol ("Plaintiff") was convicted of violating Article 120c(a)(2) of the Uniform Code of Military Justice. (Dkt. 93, at 2–3). As a result, he was required to register as a sex offender under the Sex Offender Registry and Notification Act ("SORNA"). (*Id.* at 3). Texas's SORNA-compliant sex offender registration system requires an individual to register as an "extrajurisdictional" registrant in Texas if he is required to do so under federal law or military law. (*Id.* at 2). When Plaintiff moved to Texas, he was informed that he must register as an extrajurisdictional sex offender. (*Id.* at 3). He then sued Defendants Sheila Vasquez, in her Official Capacity as Manager of the Texas Department of Public Safety-Sex Offender Registration Bureau, and Steven McCraw, in his Official Capacity as Director of the Texas Department of Public Safety

1

(collectively, "Defendants") in 2019, alleging that they violated his right to procedural due process by requiring him to register as a sex offender under Texas law. (Dkt. 1).

In August 2021, the Honorable Lee Yeakel of this Court held a bench trial. (Dkt. 69). In March 2022, the Court granted a permanent injunction enjoining Defendants from requiring Plaintiff to register as a sex offender, finding that Plaintiff had no duty to register under federal or military law, and therefore, he couldn't be registered as an extrajurisdictional offender under Texas law. (Dkt. 77). In May 2022, Defendants appealed the final judgment. (Dkt. 85). In December 2023, the Fifth Circuit reversed and remanded the case, with instructions for the Court to vacate the prior decision and dismiss the case for lack of jurisdiction based on sovereign immunity. (Dkt. 93).

On December 20, 2023, the Court held a phone conference and indicated that it would allow Plaintiff to file a motion for leave to file a third amended complaint. (Order, Dkt. 96). On this date, the Court denied Plaintiff's Opposed Motion for Leave to File a Third Amended Complaint, (Dkt. 97).

## II. LEGAL STANDARD

Federal district courts "are courts of limited jurisdiction" and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). If a court does not have jurisdiction, it must dismiss a case.

## III. DISCUSSION

In its opinion, the Fifth Circuit found that subject matter jurisdiction was lacking because *Ex parte Young* does not apply to suits against state officers "from following federal law and determinations of same by federal officers." (Dkt. 93, at 9). As the circuit court explained, *Ex parte Young* "prevents state executive officials from enforcing state laws that are contrary to federal law" but "[Plaintiff's] claims do not meet this criterion." (*Id.* at 9 n.5) (citing *Whole Woman's Health v.*

2

*Jackson*, 142 S. Ct. 522, 532 (2021)) (cleaned up). The Fifth Circuit's opinion is that "[s]uch novel relief falls squarely outside the narrow parameters articulated by *Ex parte Young* and its progeny." (*Id.* at 7). Accordingly, because Defendants were entitled to sovereign immunity for following state law that comports with federal law, the Fifth Circuit instructed the Court to dismiss this case for lack of (subject matter) jurisdiction. (*Id.* at 9).

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that the permanent injunction and final judgment, (Dkt. 77), is **VACATED. IT IS FURTHER ORDERED** that this case is **DISMISSED** for lack of subject matter jurisdiction based on sovereign immunity.

**SIGNED** on February 7, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE



3

46

# PLAINTIFF'S APPENDIX 3

KeyCite Red Flag - Severe Negative Treatment
Vacated and Remanded by Tawakkol v. Vasquez, 5th Cir.(Tex.), August 24, 2023

2022 WL 20564755
Only the Westlaw citation is currently available.
United States District Court, W.D. Texas, Austin Division.

SAMMY TAWAKKOL, PLAINTIFF,

v.

MANAGER SHEILA VASQUEZ, IN HER OFFICIAL CAPACITY AS MANAGER OF THE TEXAS DEPARTMENT OF PUBLIC SAFETY-SEX OFFENDER REGISTRATION BUREAU, AND DIRECTOR STEVEN MCCRAW, IN HIS OFFICIAL CAPACITY OF DIRECTOR OF THE TEXAS DEPARTMENT OF PUBLIC SAFETY, DEFENDANTS.

CAUSE NO. 1:19-CV-513-LY
|
Filed 03/29/2022

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

LEE YEAKEL UNITED STATES DISTRICT JUDGE

**\*1** On August 20, 2021, the court called the above-styled case for bench trial. Plaintiff Sammy Tawakkol appeared in person and by counsel. Defendants Sheila Vasquez and Steven McCraw appeared by counsel. Having carefully considered the evidence presented at trial, the pleadings, and the applicable law, the court concludes that Tawakkol proved by a preponderance of the evidence that he is not required to register as a sex offender under federal or Texas law.

In so deciding, the court makes the following findings of fact and conclusions of law, ultimately declaring that Defendants may not require Tawakkol to register as an extrajurisdictional sex offender under Texas law.[1]

**I. PROCEDURAL HISTORY AND JURISDICTION**

This suit is brought against Sheila Vazquez and Steven McCraw in their official capacities as employees of the Texas Department of Public Safety, seeking declaratory and injunctive relief for state action requiring Sammy Tawakkol to register as a sex offender under Chapter 62 of the Texas Code of Criminal Procedure and violating Tawakkol's right to procedural due process under the Fourteenth Amendment to the United States Constitution. This court has federal-question jurisdiction and can exercise jurisdiction over claims seeking declaratory and injunctive relief. 28 U.S.C. § 1331; 28 U.S.C. §§ 2201 and 1343(a). Venue is proper because Tawakkol's claim substantially arises in the Austin Division of the Western District of Texas, where the Texas Department of Public Safety is located. *See* 28 U.S.C. § 1391(b)(1), (2).

**II. FINDINGS OF FACTS**
The following findings incorporate facts stipulated by the parties, as well as those found by the court.

On January 11, 2018, Tawakkol, while enrolled as a cadet at the United States Air Force Academy, was tried by court-martial and entered a negotiated plea of guilty to three charges of criminal misconduct. All three charges stemmed from attempted or actual violations of Uniform Code of Military Justice ("UCMJ") Article 120c(a)(2), Indecent Viewing, Visual Recording, or Broadcasting. 10 USC § 920c(a)(2). Specifically, Tawakkol was convicted of "knowingly and wrongfully photograph[ing] the private area of female individuals, without their consent, and under circumstances in which the female individuals had a reasonable expectation of privacy." As punishment for commission of these offenses Tawakkol was reprimanded and restricted to a dormitory room at the Air Force Academy for 60 days. Additionally, two-thirds of Tawakkol's pay per month was ordered forfeited for a period of six months.

At the time of Tawakkol's plea, the presiding military judge ensured Tawakkol was aware that he "may have to register as a sex offender." The military judge made no formal or definitive finding of fact or conclusion of law concerning whether Tawakkol was required to register as a sex offender under any state or federal law, including the federal Sex Offender Registration and Notification Act ("SORNA"). 34 U.S.C. §§ 20901-20962.

**\*2** Tawakkol was also convicted of one count of Invasive Visual Recording on March 27, 2018, in a Texas state-court proceeding. Tex. Penal Code Ann. § 21.15(b). Tawakkol's conviction under Section 21.15(b) is not included in the

definition of a "reportable conviction or adjudication" for the purposes of the registration required by Texas law. Tex. Code. Crim. Proc. Ann. § 62.001(5).

On May 15, 2018, Tawakkol was contacted by law-enforcement officials employed by the City of Houston, Texas, and informed that, based on their correspondence with the Sex Offender Registration Bureau ("SORB") of the Texas Department of Public Safety, Tawakkol was required to register as a sex offender under Chapter 62 of the Texas Code of Criminal Procedure. Tex. Code. Crim. Proc. Ann. §§ 62.001-62.408.

On March 4, 2019, Tawakkol's attorney, Jack B. Zimmermann ("Zimmermann"), sent a letter to SORB by United States mail, arguing that Tawakkol was not required to register under any federal law, under the UCMJ, or under Chapter 62. On March 22, 2019, Vasquez, Manager of SORB, replied in writing to Zimmerman's letter:

> Thank you for your inquiry regarding Mr. Tawokkol's [sic] duty to register as a sex offender in Texas.

> Neither offense cited[2] in your letter is considered substantially similar to a reportable offense in Texas. Therefore, the Texas offense is not a 'reportable conviction or adjudication' requiring registration under CCP Chapter 62.

> However, pursuant to CCP Art. 62.001(10), the offense under Art. 120c(a)(2) of the Uniform Code of Military Justice requires Mr. Tawokkol [sic] to register as an extrajurisdictional registrant in Texas.

## III. DISCUSSION AND ANALYSIS

### A. Registration as an extrajudicial sex offender

Defendants argue that Tawakkol must register as a sex offender because he is an "extrajurisdictional registrant" under Texas law. An extrajurisdictional registrant is required to register as a sex offender in Texas. An extrajurisdictional registrant

> (A) is required to register as a sex offender under:

> ... (iii) federal law or the Uniform Code of Military Justice ... and

> (B) is not otherwise required to register under this chapter because:

> (i) the person does not have a reportable conviction for an offense under the laws of the other state, federal law, the laws of the foreign country, or the Uniform Code of Military Justice containing elements that are substantially similar to the elements of an offense requiring registration under this chapter ...

Tex. Code Crim. Proc. Ann. § 62.001(10). Article 120c(a)(2), the statute under which Tawakkol was convicted, does not "contain[ ] elements that are substantially similar to the elements of any offense requiring registration" in Texas. Tex. Code Crim. Proc. Ann. § 62.001(10)(B)(i).

### 1. Interpretation of Applicable Federal Law and Policy

The first major question this court must address is whether Tawakkol's conviction requires him to register as a sex offender under Texas law. Section 62.001(10) identifies "federal law or the Uniform Code of Military Justice" as the potential basis for Tawakkol being labeled an extrajurisdictional registrant.

Enacted as Title I of the Adam Walsh Child Protection and Child Safety Act of 2006, SORNA established a comprehensive national system for the registration of sex offenders and offenders against children. 34 U.S.C. § 20901. The statute defined "sex offense," in part, as "a military offense specified by the Secretary of Defense (the "Secretary") under section 115(a)(8)(C)(i) of Public Law 105-119 (10 U.S.C. 951 note)." 34 U.S.C. § 20911(5)(A)(iv). The relevant portion of Public Law 105-119, as amended, states that:

> **\*3** (C)(i) The Secretary of Defense shall specify categories of conduct punishable under the Uniform Code of Military Justice which are sex offenses as that term is defined in the Sex Offender Registration and Notification Act, and such other conduct as the Secretary deems appropriate for inclusion for purposes of this subparagraph.

> ...

> (iii) The procedures and requirements established by the Secretary under this subparagraph shall, to the maximum extent practicable, be consistent with those specified for Federal offenders under the Sex Offender Registration and Notification Act.

Department of Justice Appropriations Act of 1998, Pub. L. No. 105-119, § 115(a)(8)(C), 111 Stat. 2440, 2466 (1997) (as

amended by the Adam Walsh Child Protection and Safety Act, Pub. L. 109-248, § 141(i), 120 Stat. 587, 604 (2006)).[3] The current delegation of authority requires the Secretary's rulemaking to be consistent with SORNA's treatment of "Federal offenders." SORNA specifies a variety of federal penal statutes that qualify as sex offenses,[4] all of which are crimes of violence or crimes against children. In addition to these specific statutes, SORNA defines sex offense "as a criminal offense that has an element involving a sexual act or sexual contact with another" or "a criminal offense that is a specified offense against a minor."

Pursuant to this grant of authority, the Department of Defense ("DoD") has published DoD Instruction No. 1325.07, Administration of Military Correctional Facilities and Clemency and Parole Authority ("DoDI 1325.07"). DoDI 1325.07, published in 2013 as replacement to DoDI 1325.7, *inter alia* "[r]evises the offenses for which sex offender notification is required, in accordance with [SORNA]." Language relevant to determining which military offenses require sex-offender registration can be found throughout the instruction but appears to be inconsistent.

Paragraph 23(d) of Enclosure 2 of DoDI 1325.07 states that "covered offenses," that is, offenses "requiring registration as a sex offender" can be found in "Tables 4 and 5 at Appendix 4." Paragraph 23(f) directs the reader more generally to Appendix 4 for "covered sex offense[s]." Appendix 4, entitled "Listing of Offenses Requiring Sex Offender Processing," begins by stating that "[a] Service member who is convicted in a general or special court-martial of any of the offenses listed in Table 4 must register with the appropriate authorities in the jurisdiction ... in which he or she will reside, work, or attend school." Paragraph 4 of the appendix instructs that "reporting ... is required based on a qualifying conviction of any offense listed below, without regard to the date of the offense or the date of the conviction."

Notably, the appendix contains three tables: Table 4: Offenses Defined before October 1, 2007; Table 5: Offenses Defined on or After October 1, 2007 and Before June 28, 2012, and Table 6: Offenses Defined on or After June 28, 2012. Article 120c(a)(2), Tawakkol's offense of conviction, appears in Table 6. Tawakkol argues that by referencing only Table 4 at the start of the appendix, the DoD's intent is that the offenses listed in Table 6 are only listed to show offenses that require *notification* and not *registration.* After reviewing the instruction as a whole, with special attention to the language above, the court finds that DoDI 1325.07 requires

sex-offender registration for those convicted offenses listed in any of the three tables.

**\*4** As Defendants argue, the dates listed above each table "correspond to the effective dates of significant legislative changes to military law passed by Congress." These amendments revised and reorganized sex offenses into, primarily, Articles 120, 120b, and 120c. Even considering Tawakkol's notification argument and multiple references to Table 4 or Tables 4 and 5 specifically, the language and context of the instruction makes it impossible to read the instruction as Tawakkol requests. Table 6 includes the amended versions of crimes that now only exist in the articles listed in that table because the 2012 amendments moved them out of the articles listed in tables 4 and 5. Tawakkol's suggested interpretation of the instruction would require, for example, that the instruction did not intend to require registration for violations of amended statutes penalizing various sexual offenses against minors, all listed in Table 6. Additionally, Appendix 4's fifth paragraph provides some insight into the intended differences between the tables: "The offenses defined before October 1, 2007[, listed in Table 4], are included to facilitate identification of those prisoners who were convicted of offenses occurring before October 1, 2007." This context reinforces the court's understanding of the language discussed above of, specifically paragraph 23(f) of Enclosure 2 (directing the reader to Appendix Four generally for "covered offenses," a term earlier defined as offenses "requiring registration as a sex offender") and paragraph 4 of the appendix (requiring reporting "based on a qualifying conviction of any offense listed below, without regard to the date of the offense or the date of the conviction.").

Whether inconsistent references to the tables are caused by scrivener's error or inartful amendment drafting, DoDI 1325.07 requires reporting and registration for convictions of any of the offenses listed in Tables 4, 5 and 6 of Appendix 4. The court finds that in causing DoDI 1325.07 to be published, the Secretary has listed Article 120c(a)(2) as a sex offense under the Uniform Code of Military Justice, which, if a valid designation, would trigger the application of SORNA and therefore an extrajurisdictional registrant requirement under Texas law. Tex. Code Crim. Proc. Ann. 62.001(10).

### *2. Scope of Delegated Authority*

Tawakkol argues that if the Secretary listed Article 120c(a)(2) as an offense requiring registration, that act exceeded the

scope of the rulemaking authority authorized by Congress. "[F]or agencies charged with administering congressional statutes, ... how they are to act is authoritatively prescribed by Congress, so that when they act improperly,... what they do is ultra vires." *City of Arlington, Tex.* v. *F.C.C.*, 569 U.S. 290, 291 (2013).

The current delegation language provides the Secretary some latitude, requiring the Secretary to specify conduct punishable under the UCMJ that are sex offenses under SORNA and "other conduct as the Secretary deems appropriate for inclusion." § 115(a)(8)(C), 111 Stat. at 2466 (as amended by § 14*l*(i), 120 Stat. at 604). However, it also requires that the listed categories of conduct "be consistent with those specified for Federal offenders under [SORNA]." *Id.* Tawakkol asserts that because the acts defined in Article 120c(a)(2) are not consistent with the offenses requiring registration for civilian federal offenders, any attempt to list it as a covered military offense would be an *ultra vires* act.[5]

In reviewing the validity of a military law or regulation, the court gives "great deference to professional judgment of military authorities." *See Goldman* v. *Weinberger*, 475 U.S. 503, 507 (1986); *Orloff* v. *Willoughby*, 345 U.S. 83, 94 (1953) ("Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters"). The Supreme Court has explained this deference: "the special relationships that define military life have 'supported the military establishment's power to deal with its own personnel' [because] 'courts are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have.' " *Chappell* v. *Wallace*, 426 U.S. 296, 305 (1983) (quoting Earl Warren, *The Bill of Rights and the Military*, 37 N.Y.U. L. Rev. 181, 188 (1962)).

The discretion provided to the Secretary to identify qualifying offenses is limited by the delegation's plain and unambiguous language. Deference does not justify abdication of the court's duty to meaningfully review agency action. *See Rostker* v. *Goldberg*, 453 U.S. 57, 70 (1981). Congress's delegation of rulemaking authority to the Secretary requires that "to the maximum extent practicable" the identified military offenses be consistent with SORNA's definition of sexual offenses. § 115(a)(8)(C), 111 Stat. at 2466 (as amended by § 141(i), 120 Stat. at 604). The power to list "such other conduct as the Secretary deems appropriate for inclusion" provides the Secretary the power to consider uniquely military offenses, which the Secretary did by listing specific variants of "Conduct Unbecoming an Officer" and "Conduct Prejudicial

to Good Order and Discipline" as offenses requiring sex-offender processing. DoDI 1325.07, Appendix 4 to Enclosure 2. It does not authorize the Secretary to require registration for offenses that Congress contemplated and elected not to list in SORNA. When the offense of conviction is directly parallel to a civilian federal offense, namely 18 U.S.C. § 1801 ("Section 1801"), it is plainly practicable for the Secretary to remain consistent with SORNA's sex-offender classifications.

**\*5** The court must next resolve whether Congress made violations of Section 1801, or any offense comparable to Article 120c(a)(2), an offense "specified for Federal offenders" under SORNA. Even an expansive view of the scope of delegation limits SORNA's federal offenses to three categories: (i) criminal offenses involving sexual acts or sexual contact with another; (ii) specified criminal offenses against a minor, or (iii) explicitly listed federal crimes in Title 18 of the U.S. Code. 34 U.S.C. 20911(5)(A). Tawakkol's victims were not minors, and his actions did not involve "sexual contact" with his victims. It is equally clear that the explicitly listed federal offenses do not include conduct substantially similar to Tawakkol's violation of Article 120c(a)(2). The court next turns to whether a violation of Article 120c(a)(2) "has an element involving a sexual act." 34 U.S.C. 20911(5)(A)(i). Although SORNA does not define sexual act, the Attorney General has published formal guidance clarifying that "[t]he offenses covered by this clause should be understood to include all sexual offenses whose elements involve: (i) Any type or degree of genital, oral, or anal penetration, or (ii) any sexual touching of or contact with a person's body, either directly or through the clothing." Office of the Attorney General, *National Guidelines for Sex Offender Registration and Notification*, 73 Fed. Reg. 38030 (DOJ, July 2, 2008). Under a categorical, modified categorial, or fact-specific approach, this plainly excludes TawakkoFs violation of Article 120c(a)(2).

Article 120c(a)(2) cannot be considered an offense requiring sex offender-registration, at least in cases where the victim is not a minor. Such a determination by the Secretary is not permitted by the plain language of the rulemaking authority delegated to Congress. As such, any act requiring registration for a violation of Article 120c(a)(2) is not authorized by the congressional delegation of rulemaking power and is *ultra vires.*[6] As such, this court finds that Tawakkol is not required to register as a sex offender under "federal law or the Uniform Code of Military Justice" as required to trigger Texas's extrajurisdictional registrant requirement. Tex. Code Crim. Proc. Ann. 62.001(10).

**B. Due Process**

Because the court concludes that Tawakkol's offense is not one requiring sex-offender registration under SORNA, the court need not address Tawakkol's arguments regarding procedural due process.

**IV. CONCLUSION**

Article 120c(a)(2) may not be listed as a military offense requiring justification pursuant to Congress's delegation of authority. Therefore, Tawakkol is not an extrajurisdictional registrant sex offender under Texas law, and Defendants' order for him to register as such is unlawful. Having reached this conclusion, the court will permanently enjoin Defendants from requiring Tawakkol to register as a sex offender in Texas.

A final judgment will be filed subsequently.

SIGNED this 29th day of March, 2022.

**All Citations**

Slip Copy, 2022 WL 20564755

Footnotes

1    All findings of fact contained herein that are more appropriately considered conclusions of law are to be so deemed. Likewise, any conclusion of law more appropriately considered a finding of fact shall be so deemed.

2    "[N]either offense cited" refers to Tawakkol's prior convictions for violating Article 120c(a)(2).

3    The original delegation was made prior to the passage of SORNA. With SORNA's passage in 2006, Congress expressly linked its delegation of authority to the new law by amending the original, uncodified, delegation statute.

4    SORNA specifically lists 18 U.S.C. Section 1591, Sex trafficking of children or by force, fraud, or coercion; 18 U.S.C. Chapter 109A, Sexual Abuse; 18 U.S.C. Chapter 110, Sexual Exploitation and Other Abuse of Children (except failure to report child abuse and two non-punitive sections); and 18 U.S.C. Chapter 117, Transportation for Illegal Sexual Activity and Related Crimes.

5    Tawakkol's argument is limited to violations of Article 120c(a)(2) with adult victims. *See* 34 U.S.C. 20911(7)(F).

6    This court expresses no opinion on other offenses listed in DoDI 1325.07.

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

# PLAINTIFF'S APPENDIX

# 4

[PLAINTIFF'S EXHIBIT A]

Annual Report

of the

# TEXAS CIVIL JUDICIAL COUNCIL

to the

Governor and Supreme Court

for

1929-1930

(KFT 1709 .A2 [1929-1930])



the appellate courts. The stationery man is the only person who ever receives any benefit from the file docket. If the case when received is entered immediately upon the trial docket, the appellate courts have the same authority to extend the time for submission as is given by the original Article 1845.

The reason for the enactment of the bill is too obvious to require an extended discussion.

---

## BILL NO. 6.

### PERIOD OF LIMITATION—EXTENSION FOR MISTAKE OF JURISDICTION.

An Act to Extend the Period of Limitation Because of Filing of Any Action in the Wrong Court, Unless Opposite Party Shows Intentional Disregard of Jurisdiction, and Declaring an Emergency.

*Be It Enacted by the Legislature of the State of Texas:*

SECTION 1. When an action shall be dismissed in any way, or a judgment therein shall be set aside or annulled in a direct proceeding, because of a want of jurisdiction of the trial court in which such action shall have been filed, and within thirty days after such dismissal or other disposition becomes final, such action shall be commenced in a court of proper jurisdiction, the period between the date of first filing and that of commencement in the second court shall not be counted as a part of the period of limitation unless the opposite party shall in abatement show the first filing to have been in intentional disregard of jurisdiction.

SEC. 2. That all laws and parts of laws in conflict herewith are hereby repealed.

SEC. 3. The importance of simplifying court procedure and the near approach of the end of the session of the Legislature creates an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days be suspended, and said rule is suspended and this act shall take effect and be in force from and after its passage, and it is so enacted.



## MEMORANDUM

As is well known, when a Texas suit is dismissed or the judgment therein is annulled for want of jurisdiction, limitation runs until the suit is again commenced and prosecuted in a court of competent jurisdiction, without any deduction for the time of its pendency in the first court. See 37 C. J. 1083.

That the wrong court is frequently and in good faith chosen by capable lawyers, is evidenced by the hundreds of cases cited in the annotations upon the subject given in Vernon's Annotated Texas Statutes,—9 pages upon Justice Court, 17 pages upon county court and 29 pages upon district court jurisdiction (See Vol. 8, pp. 40-49; Vol. 4, pp. 430-447 and 380-413).

Most states have met situations of this sort by statute, as is shown by the following quotation from 37 C. J. 1083:

> In lieu of the ancient remedy nearly every state has provided by statute for the renewal of actions which have failed for some matter not involving the merits. Such a statute does not contemplate a revival or a continuance of a former suit as at common law under "journey's account," but that a new and distinct suit may be brought. The statutes on this subject vary greatly in their scope. Some limit the right to bring a second action to cases in which there has been an involuntary nonsuit; others to dismissal by the court for some matter of form not involving the merits; others to dismissals as the result of a reversal; others to cases where the judgment in favor of plaintiff has been arrested or set aside; still others include various combinations of the above provisions.

The Kentucky statute upon the subject, referred to in a note to the foregoing text, reads:

> Where an action has been or shall be commenced in due time and in good faith, in any court of this commonwealth, and the defendants, or either of them, have or shall make defense, and it shall be adjudged that such court had or has no jurisdiction of the action, the plaintiff or his representative may, within three months from the time of such judgment, commence a new action in the proper court, and the time between the commencement of the first and last action shall not be counted in applying the limitation.—Carroll's Kentucky Statutes (1922), Sec. 2545.

The measure recommended for Texas is like that of Kentucky in substance, but the time of refiling is made shorter

and a definition of "good faith" and a method of raising the point are supplied. Abatement seems to be the appropriate method, as the suggested contest is in the nature of a plea of "fraud on the jurisdiction" and has no relation to the merits of the case.

Laxity on the part of the mistaken party would be reasonably deterred by the prospect of losing the costs and time and expense in the suit as first filed.

The object of the proposed measure might be reached by a provision for transferring a case from a court without to a court with jurisdiction; but that would raise the question of whether the legislature could give validity to the pendency of a case in a court that had no jurisdiction under the *constitution;* and in all probability it would be decided that the legislature could not do so. Ball v. Hagy, 54 S. W. 915; I. & G. N. v. Flory, 118 S. W. 1116; Pecos & N. T. Ry. Co. v. Rayzor, 106 Texas 544.

Such a question is avoided by fixing a longer period of limitation for one reasonable class of cases than for another. That in effect is what the present measure would accomplish.

---

## BILL NO. 7.

### ASSIGNMENTS OF ERROR IN BRIEF INSTEAD OF RECORD.

An Act to Amend Articles 1844 and 2281 of the Revised Statutes So as to Allow Assignments of Error and Cross Assignments of Error in Briefs Instead of the Record, and Declaring an Emergency.

*Be It Enacted by the Legislature of the State of Texas:*

SECTION 1. That Article 1844 of Chapter 3 of Title 39 of the Revised Civil Statutes of the State of Texas, 1925, be amended so as hereafter to read as follows:

Article 1844. The appellant or plaintiff in error need not file assignments of error with the clerk of the court below, but he may embody in his brief in the appellate court all assignments of error distinctly specifying the grounds on which he relies. All errors not distinctly specified are waived, but an assignment shall be sufficient which directs the attention of



## 1. PERIOD OF LIMITATION—EXTENSION FOR MISTAKE OF JURISDICTION.

An Act to Extend the Period of Limitation During Delay Because of Filing in the Wrong Court, unless Opposite Party Shows Intentional Disregard of Jurisdiction.

*Be It Enacted by the Legislature of the State of Texas:*

SECTION 1. When an action shall be dismissed in any way because of a want of jurisdiction of the trial court in which it shall have been filed, and within thirty days after such dismissal or other disposition becomes final, shall be commenced in a court of proper jurisdiction, the period between the date of first filing and that of commencement in the second court shall not be counted as a part of the period of limitation unless the opposite party shall in abatement show the first filing to have been in intentional disregard of jurisdiction.

SEC. 2. That all laws and parts of laws in conflict herewith are hereby repealed.
(Emergency Clause.)

---

## 2. FINDINGS AND CONCLUSIONS—EXTENSION OF FILING TIME.

An Act to Extend Time for Filing Findings of Fact and Conclusions of Law and in Such Respect to Amend Revised Statutes Art. 2247.

*Be It Enacted by the Legislature of the State of Texas:*

SECTION 1. That Article 2247 in Chapter Eleven in Title 42 of the Revised Civil Statutes of the State of Texas, 1925, be amended so as hereafter to read as follows:

Art. 2247. When demand is made therefor, the judge of a district or county court shall have ten days after final judgment or order overruling motion for new trial in which to prepare his findings of fact and conclusions of law in any case tried before the court. *If he shall fail so to prepare them, the party so demanding, in order to complain of the failure shall within five days after such period, call the omission to the attention of the judge, whereupon the period for due preparation and filing shall be automatically extended for five days after such notification.*



This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Richard Gladden
Bar No. 07991330
richscot1@hotmail.com
Envelope ID: 100696340
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Appellant's Corrected Brief
Status as of 5/12/2025 9:56 AM CST

Associated Case Party: Sammy Tawakkol

| | | | | |
|---|---|---|---|---|
| Richard Gladden | | richscot1@hotmail.com | 5/12/2025 9:36:02 AM | SENT |
| Terri Sparks | | terri.with.gladdenlaw@gmail.com | 5/12/2025 9:36:02 AM | SENT |

Associated Case Party: Steven McCraw

| | | | | |
|---|---|---|---|---|
| Christopher Lindsey | 24065628 | Christopher.Lindsey@oag.texas.gov | 5/12/2025 9:36:02 AM | SENT |

Associated Case Party: Sheila Vasquez

| | | | | |
|---|---|---|---|---|
| Christopher Lindsey | 24065628 | Christopher.Lindsey@oag.texas.gov | 5/12/2025 9:36:02 AM | SENT |

Case Contacts

| | | | | |
|---|---|---|---|---|
| Eric Abels | | Eric.Abels@oag.texas.gov | 5/12/2025 9:36:02 AM | SENT |